IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE MEYER COMPANY, <br> d/b/a TOMLINSON INDUSTRIES, <br><br> Plaintiff, <br><br> vs. <br><br> PRIMO WATER CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. 17-cv-357 <br><br> JUDGE <br><br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

Plaintiff, The Meyer Company, d/b/a Tomlinson Industries ("Tomlinson"), for its complaint against Primo Water Corporation ("Primo") alleges as follows:

**PARTIES**

1.  Plaintiff Tomlinson is a corporation formed under the laws of the State of Ohio with its corporate headquarters located 13700 Broadway Avenue, Cleveland, Ohio 44125. Tomlinson is a manufacturer and seller of faucets and fittings for beverages/liquid dispensing and commercial foodservice equipment, and it conducts business in and has customers in Ohio and in this District.

2.  On information and belief, Defendant Primo is a corporation formed under the laws of the State of North Carolina and has a principal place of business at 101 N. Cherry St, Suite 501, Winston Salem, NC 27101-4013. On information and belief, Primo is a national

supplier of, among other things, water dispensers. Primo conducts business, including marketing and sale of the subject product, in Ohio and in this District.

## JURISDICTION AND VENUE

3. In this action, Tomlinson's claims against Primo are for trademark infringement under 15 U.S.C. § 1114 *et seq.*, and more particularly, for infringement of Tomlinson's Registered Trademark (as defined below); for false designation of origin and unfair competition under 15 U.S.C. § 1125(a); for common law trademark infringement and unfair competition under the laws of Ohio; and for trademark infringement and unfair competition under § 4165.02 *et seq.* of the Ohio Revised Code.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, 1338 and 15 U.S.C. § 1121.

5. This Court has personal jurisdiction over Primo pursuant to the provisions of the Ohio Long Arm Statute, O.R.C. § 2307.382, and the laws of the United States. On information and belief, Primo markets, offers to sell, and/or sells a product that is the subject of the present Complaint to Ohio residents and in this District via the internet, including on the website https://primowater.com, and through other avenues of advertising common to the trade. Primo distributes to national and local retailers, such as Walmart and Bed Bath & Beyond, which have stores located in this District. The product that is the subject of the present Complaint is available for direct purchase at Walmart stores located in this District, and it is made available for delivery to Ohio residents in this District through the e-commerce websites of Walmart and Bed Bath & Beyond, among others. Primo's actions as alleged in the Complaint have caused and continue to cause tortious injury to Tomlinson and have enabled Primo to wrongfully derive revenues from activities within the State of Ohio and this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Primo is subject to personal jurisdiction in this District, and because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## TOMLINSON AND ITS REGISTERED TRADEMARK

7. Since at least as early as 1911, Tomlinson, or its predecessors in interest, has been manufacturing and selling faucets for the dispensing of a wide variety of beverages, including coffee, tea, chocolate, water, wine, beer, condiments, and many other liquid products.

8. Since at least as early as 1911, Tomlinson's primary markets have been industries using beverage/liquid dispensing equipment and commercial foodservice equipment.

9. Since at least as early as 1963, Tomlinson began manufacturing and selling a faucet in a distinctive and unique ornamental design—depicted in Registration No. 2,058,539 (the "'539 Registration") on the Principal Register of the United States Patent and Trademark Office—to make this faucet stand out from the other faucets that existed at the time. A copy of Tomlinson's Principal Registration for the trademark is attached as Exhibit A hereto and an example of the distinctive faucet design (the "Tomlinson Faucet") is attached as Exhibit B hereto.

10. The '539 Registration accounts for a significant amount of sales for Tomlinson.

11. The '539 Registration has been exclusively identified with Tomlinson and embodies Tomlinson's goodwill and reputation to its customers, potential customers, and consumers throughout the United States in the faucet market within the beverage/liquid dispensing and commercial foodservice industries.

12. Consequently, the '539 Registration has identified, and continues to identify Tomlinson as the source of the Tomlinson Faucet and has strong secondary meaning to Tomlinson's customers, potential customers, and consumers.

### TOMLINSON'S DISTINCTIVE U.S. PRINCIPAL REGISTRATION NO. 2,058,539

13. As shown in Exhibits A and B, the '539 Registration is highly distinctive of three-dimensional liquid dispensing faucets.

14. Tomlinson introduced the Tomlinson Faucet and began promoting beverage/liquid dispensing products carrying the Tomlinson Faucet in commerce across the United States in at least as early as 1963.

15. Tomlinson's product offerings using the Tomlinson Faucet have grown from a single offering to many offerings, made of different materials.

16. For over fifty (50) years, the Tomlinson Faucet has been exclusively identified with Tomlinson and embodies Tomlinson's goodwill and reputation to its customers, potential customers, and consumers throughout the United States in the beverage/liquid dispensing and commercial foodservice equipment markets.

17. Consequently, the '539 Registration has been and continues to be, one of Tomlinson's most recognizable trademarks identifying Tomlinson as the source of the Tomlinson Faucet, and has strong secondary meaning to Tomlinson's customers, potential customers, and consumers.

### TOMLINSON'S SUBSTANTIAL INVESTMENT IN ITS TRADEMARK

18. Tomlinson has invested heavily in marketing, promoting, and the widespread use of the Tomlinson Faucet incorporating the '539 Registration.

19. Tomlinson has promoted and established the '539 Registration as a source-identifying trademark through, *inter alia*, widely-distributed full color catalogs and brochures, extensive use of the '539 Registration throughout Tomlinson's internet website, attendance and advertising at trade shows, and through other avenues of advertising common to the trade.

20. As a result of Tomlinson's extensive marketing and promotional efforts, and sales of its products incorporating the '539 Registration, the trademark has become famous.

**PRIMO'S INFRINGEMENT OF TOMLINSON'S REGISTERED TRADEMARK**

21. Primo has and continues to market, promote, offer for sale and sell in interstate commerce water dispensers including a counterfeit Tomlinson Faucet that incorporates and infringes Tomlinson's '539 Registration. Examples of such counterfeit faucet product is shown below in comparison to the Tomlinson Faucet and in comparison to the '539 Registration.




Primo


Registration No. 2,058,539

Photographs of the counterfeit faucet product in comparison to the Tomlinson Faucet are also shown collectively in Exhibit C hereto. The counterfeit faucet is a component of Primo's Ceramic Crock Water Dispenser, shown in Exhibit D, which is offered for sale on Primo's website and in retail outlets in the Northern District of Ohio.

### PRIMO'S WILLFUL INFRINGEMENT

22. On information and belief, Primo designed its faucet to imitate and infringe Tomlinson's '539 Registration.

23. Primo's infringement of Tomlinson's '539 Registration has caused, is causing, and is likely in the future to cause confusion, deception, and mistake concerning (a) the source and/or origin of Primo's products; (b) the affiliation, connection, or association between Tomlinson and Primo; and (c) Tomlinson's sponsorship or approval of Primo's products.

24. Primo's infringement has tarnished, is tarnishing, and likely will in the future further tarnish Tomlinson's reputation, and damage or destroy the goodwill embodied in Tomlinson's '539 Registration.

25. Primo's infringement has caused, is causing, and likely will in the future further cause dilution of the distinctive quality of the famous '539 Registration.

26. On information and belief, Primo was and has been on notice of Tomlinson's exclusive rights in the '539 Registration since at least as early as May 6, 1997 (the respective day the trademark was registered), and was aware of Tomlinson's adoption and use of this trademark before Primo started using the counterfeit faucet design on its products.

27. On information and belief, Primo was and has been on notice of Tomlinson's exclusive rights in the '539 Registration through, *inter alia*, Tomlinson's initial cease and desist letter to Primo (the "Cease and Desist Letter"). A copy of the Cease and Desist Letter is attached hereto as Exhibit E.

28. On or about October 12, 2016, Tomlinson sent the Cease and Desist Letter, addressed to Billy Prim, by Certified Mail-Return Receipt Requested. Mr. Prim refused to sign for the Cease and Desist Letter and it was returned to the offices of Fay Sharpe LLP. A copy of the tracking information is attached hereto as Exhibit G.

29. On or about November 22, 2016, Tomlinson again attempted to deliver a copy of the Cease and Desist Letter to Mr. Prim of Primo, this time by United States Postal Service Priority Mail. *See* correspondence attached as Exhibit F. The letter was delivered November 25, 2016, according to the USPS website. See Exhibit G.

30. Primo never responded to the Cease and Desist Letter. Despite the above-mentioned notice, Primo has and continues to knowingly, willfully, and intentionally infringe Tomlinson's '539 Registration.

31. On information and belief, Primo has received profits from its infringing use of Tomlinson's '539 Registration.

32. Unless restrained by this Court, Primo's infringement of Tomlinson's '539 Registration will continue to cause serious and irreparable injury, including, but not limited to,

loss of competitive advantage, loss of business reputation and goodwill, loss of sales and profits, and other losses—harm for which Tomlinson has no adequate remedy at law.

## COUNT I

**14 U.S.C. § 1114—Infringement of Tomlinson's U.S. Principal Registration No. 2,058,539**

33. Tomlinson realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

34. The claim arises pursuant to 15 U.S.C. § 1114, Section 32 of the Lanham Act, for infringement of Tomlinson's '539 Registration.

35. After the adoption, use and registration by Tomlinson of the '539 Registration, Primo adopted and began using the mark in commerce without the authorization of Tomlinson for a counterfeit faucet sold as a component of a water dispenser. Primo's conduct is willful and with full knowledge of Tomlinson's prior use of and rights to the '539 Registration.

36. Primo's use of the '539 Registration in connection with counterfeit faucets is a violation of Tomlinson's rights and constitutes infringement of the '539 Registration, because such use is likely to cause confusion, mistake, and deception of consumers as to the source of Primo's goods.

37. Primo's acts have been and are being committed with the intent and purpose of misappropriating the goodwill of Tomlinson.

38. Tomlinson has been, is, and will continue to be irreparably harmed by Primo's unauthorized use of the '539 Registration. In particular, because Tomlinson's inability to regulate either the conditions of the products sold, or the advertisements of Primo, Primo's unauthorized use of the '539 Registration will cause injury to the valuable reputation and goodwill Tomlinson has developed in the '539 Registration.

39. As a direct and proximate result of Primo's violation of Tomlinson's trademark rights, Tomlinson has been damaged by a loss of profits and sales. Further, Primo has benefitted by its continued unauthorized use of the '539 Registration, thereby realizing profits and sales it would not otherwise have obtained. Tomlinson has also incurred attorney's fees and costs to bring the present action.

40. Defendant is now committing the acts alleged above and has refused to cease committing those acts after due notice of Tomlinson's rights. Unless Primo is enjoined from continuing its wrongful acts, Tomlinson will continue to be immediately and irreparably harmed.

41. Tomlinson has no adequate remedy at law, and the balance of the equities favors Tomlinson.

42. The aforesaid wrongful acts of Primo constitute willful infringement of Tomlinson's U.S. Principal Registration No. 2,058,539 in violation of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II

### 15 U.S.C. § 1125(a)—False Designation of Origin and Unfair Competition

43. Tomlinson incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

44. This Count arises under 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act, for false designation, description, and representation of goods and services as to their nature and origin.

45. After the purchase, adoption, use and registration by Tomlinson of the '539 Registration, Primo adopted the counterfeit faucet design embodied in the '539 Registration in connection with the sale of identical goods.

46. The use of Tomlinson's faucet design by Primo is likely to cause confusion, mistake and deceive customers.

47. Primo is not authorized or licensed to use the faucet design embodied in Tomlinson's '539 Registration. Despite these facts, Primo has used and continues to use the faucet design in commerce in a manner likely to cause confusion or mistake as to the origin of faucets. Because of Primo's wrongful use of the faucet design, Primo is deceptively leading consumers to believe that its product originates with or is sponsored or otherwise approved by Tomlinson, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Primo has committed, is now committing, and will continue to commit the acts described above, because Primo has refused to cease committing those acts after due notice of Tomlinson's rights, and will continue the same unless enjoined by this Court.

49. Primo is intentionally and willfully deceiving the public while depriving Tomlinson of the sales and profits it would otherwise obtain, and has irreparably damaged the valuable reputation and goodwill.

50. Tomlinson has no adequate remedy at law, and the balance of the equities favors Tomlinson.

## **COUNT III**

### **Unfair Competition—Ohio Revised Code § 4165.02 *et seq.***

51. Tomlinson incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

52. The acts and conduct of Primo as alleged above constitute unfair competition as defined by Ohio Revised Code § 4165.02, *et seq*.

53. Primo, among other things, is likely to cause or have caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services or confusion among customers and the public as to Tomlinson's sponsorship, approval or certification of Primo's competing products.

54. Primo's conduct as alleged above has damaged and will continue to damage Tomlinson's goodwill and reputation and has resulted in losses to Tomlinson and an illicit gain of profit to Primo in an amount that is unknown at the present time.

## COUNT IV

### Common Law Unfair Competition

55. Tomlinson incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

56. Primo's acts constitute unfair competition and misappropriation of Tomlinson's trademark and goodwill, under the common law of the State of Ohio.

57. Primo's acts are intended to attract attention to Primo's products and thereby gain a commercial advantage by attracting business by the use of Tomlinson's goodwill.

58. Primo's activities have caused and will cause irreparable harm, damage, and injury to Tomlinson, for which Tomlinson has no adequate remedy at law.

59. The activities of Primo have damaged, are damaging, and will continue to damage Tomlinson in an amount as yet undetermined.

## COUNT V

### Attorney's Fees

60. Tomlinson incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

61. Tomlinson is entitled to recover its attorney's fees and expenses pursuant to 15 U.S.C. § 1117 for at least the reason that Primo's infringement is malicious, fraudulent and deliberate.

## PRAYER FOR RELIEF

WHEREFORE, Tomlinson prays for the following relief:

(A) Entry of judgment against Primo for all counts in the Complaint and a permanent injunction ordering that Primo, its affiliates and subsidiaries, and all those acting in concert or participation with it, shall not manufacture, use, sell, import, distribute, or market, directly or indirectly, any product including a faucet design that infringes Tomlinson's U.S. Principal Registration No. 2,058,539, including but not limited to water dispensers incorporating infringing faucets and/or infringing replacement faucets for such dispensers;

(B) That Tomlinson recovers its damages incurred as a result of Primo's continued unauthorized use of the '539 Registration, including without limitation the revenues and profits received by Primo from its use of such '539 Registration, said amount to be trebled, or, in the alternative, the Court award statutory damages of two million dollars ($2,000,000.00) for the '539 Registration infringed by Primo;

(C) That Tomlinson recovers its reasonable attorney's fees and expenses incurred in connection with bringing this action;

(D) An Order requiring Primo, and its principals, servants, officers, directors, partners, agents, representatives, shareholders, employees, affiliates, successors, and assigns, and all those acting in concert or participation with them, to deliver up all goods or products, molds, promotional materials of any kind including the infringing faucets or any other faucet confusingly similar thereto or likely to dilute the distinctiveness of the '539 Registration;

(E) That all costs of this action be charged against Primo;

(F) That the Court find Primo's conduct to be willful and wanton;

(G) That the Court find this to be an exceptional case; and

(H) That the Court grant such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Tomlinson requests a trial by jury on all issues so triable.

Respectfully submitted,

Date: February 21, 2017

/s/Jude A. Fry
Jude A. Fry (0053651)
Mandy Willis (0079208)
FAY SHARPE LLP
The Halle Building, 5th Floor
1228 Euclid Avenue
Cleveland, Ohio  44115
Phone:  (216) 363-9000
Fax:  (216) 363-9001
E-Mail:  jfry@faysharpe.com
         mwillis@faysharpe.com

Attorneys for Plaintiff,
The Meyer Company
d/b/a Tomlinson Industries

TOMZ 700545US01 3991961 1